(174 App. Div. 65)

## ATLANTA MACH. WORKS v. FELTHOUSEN.

(Supreme Court, Appellate Division, Fourth Department.    July 6, 1916.)

**1. SALES ⬅182(1)—BREACH OF CONTRACT—QUESTION OF FACT.**

In an action by the purchaser of steel castings to recover damages for breach of contract, whether the rejected castings came up to the requirements of the contract, and, if not, whether plaintiff accepted them, so as to preclude it from returning them, were questions of fact.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 492; Dec. Dig. ⬅182(1).]

**2. SALES ⬅72(1)—CONTRACT—CONSTRUCTION.**

Where defendant agreed to furnish castings of ductile steel metal of a certain tensile strength to the square inch, without knowledge, when the contract was made, that plaintiff intended to use the castings in making ammunition hoists for the federal government, defendant was not required by his contract to furnish castings which would pass government inspection under the contract plaintiff had with the government.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 197; Dec. Dig. ⬅72(1).]

**3. SALES ⬅72(4)—PRECLUSION FROM QUESTIONING GOODS.**

Where the buyer of steel castings for use in government construction work stated in its letter ordering them that, if any proved defective in the process of machining, the seller should replace them at his expense, the seller further positively assuring the buyer that the castings would meet the tensile strength requirements of the buyer's contract with the government, the buyer was not necessarily precluded from questioning the tensile strength of the castings by machining them.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 200; Dec. Dig. ⬅72(4).]

**4. SALES ⬅182(3)—BREACH OF CONTRACT—QUESTION OF FACT.**

In an action, by the buyer of steel castings for use in constructing government ammunition hoists, against the seller for breach of contract, whether the buyer acted with reasonable promptness and diligence in ascertaining any deficiency in the castings, and giving notice thereof to the seller, and returning them, was a question of fact.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 494; Dec. Dig. ⬅182(3).]

**5. SALES ⬅404—REMEDIES OF BUYER—COMPLAINT.**

In an action, by the buyer of steel castings for use in constructing government ammunition hoists, against the seller for breach of contract, where the complaint alleged that on the discovery that the castings were not of steel, and did not have a tensile strength as provided by the contract, the buyer returned the unused part, and was obliged to purchase other castings at a greatly increased price, seeking to recover the cost and other necessary expenses and other damages, such complaint was to recover damages for breach of an executory contract to manufacture and supply castings of a particular description, and not for breach of an express warranty, surviving acceptance, as to the quality and tensile strength of the castings.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1146; Dec. Dig. ⬅404.]

**6. SALES ⬅421—REMEDIES OF BUYER—ACTION FOR BREACH—INSTRUCTIONS.**

In an action for breach of contract against the seller by the buyer of steel castings for use in constructing government ammunition hoists, which castings were contracted to have certain tensile strength of from 55,000 to 65,000 pounds to the square inch, where the jury was instructed that, if the castings were in substantial compliance with the contract,

verdict should be for defendant, plaintiff's request, after the court reiterated, upon plaintiff's exception, that substantial compliance, reasonable compliance, was all that the contract required, to charge that a reasonable or substantial compliance in the particular case would be one in which the tensile strength ranged between 55,000 and 65,000 pounds, was improperly refused.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1203; Dec. Dig. ☞421.]

Appeal from Trial Term, Erie County.

Action by the Atlanta Machine Works against Edward G. Felthousen. From a judgment for defendant, and an order denying plaintiff's motion to set aside the verdict, plaintiff appeals. Judgment and order reversed, and new trial granted.

Argued before KRUSE, P. J., and FOOTE, LAMBERT, MERRELL, and DE ANGELIS, JJ.

Simon Fleischmann, of Buffalo, for appellant.
Ralph S. Kent, of Buffalo, for respondent.

KRUSE, P. J. The defendant contracted with the plaintiff to make and furnish castings of a kind and at a price specified, to be made according to blueprints and patterns furnished by plaintiff. The defendant made all the castings so contracted for, and delivered them upon cars, except the last pouring, which the plaintiff refused to receive, claiming that the castings theretofore delivered were not up to the requirements of the contract, and finally returned to the defendant all of the castings save a small quantity (about 1,000 pounds), which had been used in government construction work, and as to which no claim seems to be made.

The plaintiff sues to recover damages for a breach of the contract, while the defendant counterclaims for the purchase price of the castings so manufactured. The case has been tried twice. Upon the first trial a verdict was directed for the defendant for the purchase price remaining unpaid. Upon appeal to this court, the judgment entered upon the verdict was reversed and a new trial ordered, holding that questions of fact were presented which should have been submitted to the jury. Atlanta Machine Works v. Felthousen, 167 App. Div. 946, 151 N. Y. Supp. 922. Upon the second trial a like verdict was rendered by the jury, and the plaintiff again appeals, urging numerous objections relating to evidence and the charge.

[1] I think the correspondence between the parties clearly shows that the defendant agreed to make and furnish castings made of ductile steel metal, having a tensile strength of from 55,000 to 65,000 pounds to the square inch, which metal is described in the defendant's letter of February 3, 1909, to the plaintiff and the circular accompanying the same. Whether the rejected castings came up to the requirements of the contract, and, if not, whether the plaintiff accepted the castings, so as to preclude it from returning them, were questions of fact, as was pointed out in our former decision, and what was said upon that subject need not be repeated here.

While the castings were intended for use in constructing ammunition hoists, for which the plaintiff had a contract with the federal

government, that fact was not made known to the defendant until after he had entered into the contract with the plaintiff and had supplied some of the castings. When his attention was called to that fact, he frankly stated to the plaintiff that he feared the material would not pass government inspection, whereupon plaintiff replied that the government specifications required only that the castings should be true, smooth, and annealed, having a tensile strength of not less than 50,000 pounds, to which defendant replied that, if that was the only question, he had no doubt the material would pass government inspection, and that he would send test bars, made at the same time as the castings, which would show the tensile strength as claimed by the circular.

It is very apparent that, soon after the first shipment of castings arrived at the plaintiff's shops at Atlanta, Ga., about May 12th, the government inspector became suspicious that they were not up to the requirements, and suggested to the plaintiff's president or superintendent that tests be made. But he was put off from time to time, and a test was not made until the following July.

The test bars reached Atlanta early in June, but the test was not made until July 22d. That test showed, as plaintiff claims, that the tensile strength of the material was not up to 55,000 pounds, but even less than 50,000 pounds. The defendant contends that, if in fact the castings were not up to the requirements, the plaintiff should have rejected them; that it then knew, and could have known as early as May, the condition of the castings, but, instead of rejecting them, continued machining them and ordering others; even after the July test, and as late as July 21st, the plaintiff wrote to the defendant, asking him to hurry forward the rest of the castings, and requesting him to hold a draft which defendant proposed making upon the plaintiff, stating that quite a number of the castings had been rejected by the inspector, but plaintiff had hopes of persuading him to accept them, or some of them, and assuring defendant that the plaintiff would forward a check to cover when it could get the matter passed upon.

After the July test the government inspector sent the specimens to the department at Washington for a further test, and a test was made August 23d at Baltimore by government officials, which, as plaintiff claims, showed that but one specimen reached the minimum of 55,000 pounds; all the others being below 50,000, some running as low as 25,000 pounds. After this test both parties tried to induce the government officials to accept the castings, but failed. It is unnecessary to go into the details of the correspondence and negotiations between the parties and the government officials. It is sufficient to say that the government officials finally rejected the castings, except about 1,000 pounds, to which reference has heretofore been made, and ultimately, and late in the fall of 1909, the rejected castings were shipped back to the defendant at Buffalo.

[2] Although the defendant was required to furnish castings having a tensile strength of 55,000 to 65,000 pounds, I do not think it was required to furnish castings which would pass government in-

spection under the contract which the plaintiff had with the government. Nor is the statement in the letter of May 21st from plaintiff to the defendant correct, namely, that the only specifications in the government contract were for steel having a tensile strength of not less than 50,000 pounds, true, smooth, and annealed. But it is contended by the plaintiff that if the tensile strength had been 50,000 pounds, or even averaged t¹ at, the government officials would have accepted the castings.

The defenda;t contends otherwise, claiming that the plaintiff knew that the quality of the steel for which it had contracted with the defendant would not and did not come up to the requirements of its contract with the government, but that plaintiff hoped to be able to use a cheaper grade of steel; that while the price which the defendant was to receive was not more than 5 cents a pound, the steel which the plaintiff was finally required to put into the work to meet the government specifications cost, some of it, as high as 16 cents a pound, and averaged, according to the testimony of plaintiff's president 7.38 cents a pound; and that the plaintiff continued ordering castings from the defendant and machining such as were delivered, urging defendant to hurry the castings along, knowing that the metal did not come up to the government requirements.

[3, 4] I do not think the plaintiff is necessarily precluded from questioning the tensile strength of the castings by machining them, in view of the statement in the letter ordering the castings that, if any prove d/ /fective in process of machining, defendant is to replace the same, at his expense, and the further positive assurance that they would meet the tensile strength requirements of the contract. But, as before stated, whether the plaintiff acted with reasonable promptness and diligence in ascertaining the deficiency, if any there were, in the castings, and giving notice thereof to the defendant, and returning the same, was a question of fact.

[5] But the plaintiff further contends that there was an express warranty as to the quality and tensile strength of the castings, which survived acceptance. That may be so, but this action does not seem to be of that nature. This is not a case where a party takes and retains title to the property, and seeks to recover damages for a breach of a collateral undertaking of warranty. Here the plaintiff has returned the property, and seeks to recover damages for the breach of the executory contract in failing to make and furnish castings of the kind, quality, and strength stated in the contract. The complaint alleges, in substance, that upon the discovery that the castings were not made of steel, and did not have a tensile strength as provided by the contract, the plaintiff returned the unused portion of the castings and was obliged to purchase other castings at a greatly increased price, and seeks to recover the cost and other necessary expenses in obtaining castings, and other damages it sustained by reason of the failure of the defendant to perform the contract.

True, the trial judge charged that there was an express warranty, and various requests to charge were made upon that subject, and exceptions taken by plaintiff to the rulings thereon some of which it

might be difficult to sustain if the action had been of that nature. We think the complaint, as well as the course of the trial, indicate that the action was to recover damages for breach of an executory contract to manufacture and supply castings of a particular description.

[6] There are numerous exceptions relating to the charge. The requests and exceptions cover 50 or more pages of printed matter. It is unnecessary to review them in detail. The more serious ones relate to the question of warranty, which we think is not in this case. We are, however, of the opinion that the charge relating to substantial performance was erroneous. As before stated, these castings should have had a tensile strength of from 55,000 to 65,000 pounds to meet the requirements of the contract. The jury was instructed that if the castings were in substantial compliance with the contract—not exact and precise, but substantially, reasonably, fairly in compliance with the contract—the verdict should be for the defendant, to which plaintiff's counsel excepted, and thereupon the court stated that substantial compliance, reasonable compliance, is all that any contract requires. Plaintiff's counsel then requested the court to charge that a reasonable or substantial compliance in this case would be one in which the tensile strength ranged between 55,000 and 65,000 pounds to the square inch, to which the court replied:

"I will leave that to the jury. I am not going to pass on that. That is for the jury to consider."

To which refusal counsel excepted. We think the request should have been charged. Of course, the jury may have found against the plaintiff on the question of acceptance; but, upon the other hand, they may have found for the plaintiff upon that question, and reached the conclusion that castings of less than 55,000 pounds tensile strength would meet the requirements of the contract.

The judgment and order should therefore be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.